IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *  CRIMINAL NO. MJM-25-022 |
| | * |
| SHAWNTA HOPPER, | * |
| | * |
| Defendant. | * |
| | * |

*******

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America submits this Sentencing Memorandum in Support of a Sentence of nine months of imprisonment for defendant Shawnta Hopper. Hopper knowingly participated in a marriage fraud conspiracy that defrauded the United States and exploited the immigration system, in violation of 18 U.S.C. § 371. She facilitated sham marriages, recruited vulnerable U.S. citizens to participate in fraudulent marriages with aliens, and profited from this scheme. For the reasons set forth below, Hopper should be sentenced to nine months of imprisonment, to be followed by a three-year term of supervised release.

**I.   BACKGROUND**

   **A.   Procedural Background**

On February 5, 2025, Hopper was charged by Indictment along with three co-defendants—Ella Zuran, Tatiana Sigal, and Alexandra Tkach—with Conspiracy to Commit Visa Fraud and Marriage Fraud, in violation of 18 U.S.C. § 371. *See* ECF 1. The Indictment was initially sealed and remained under seal until March 12, 2025. *See* ECF 3, 8. Also on March 12, Hopper appeared in the District of New Jersey, where she resides, for an initial appearance. On March 14, 2025, she appeared in this District for an initial appearance and arraignment, at which time she entered a plea of not guilty. *See* ECF 16, 18. She was released on conditions. *See* ECF 19.

1

On November 21, 2025, Hopper was re-arraigned and pled guilty to Count One of the Indictment. *See* ECF 67, 68. A plea agreement was filed on that same date. *See* ECF 68. Hopper is scheduled to appear before this Court for sentencing on March 20, 2026.

With due regard to the calculated guidelines, as prepared by the United States Probation Office, and pursuant to the factors set out at 18 U.S.C. § 3553(a), the United States of America respectfully recommends the Court sentence Hopper to nine months in prison, to be followed by three years of supervised release.

**B.     Offense Conduct**

The following facts were agreed to in the plea agreement, *see* ECF 68 at Attach. A, and are reflected in the Presentence Report ("PSR") at paragraphs 9 through 16.

1. *Relevant Entities and Immigration Procedure*

The United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), is responsible for overseeing lawful immigration to the United States and providing procedures for U.S. citizens and permanent residents to acquire permanent resident status for their immigrant spouses. An alien can obtain lawful permanent residence in the United States based on a valid marriage to a U.S. citizen. The U.S. citizen in a valid marriage may apply for such an immigration benefit. As part of this process, the U.S. citizen spouse must submit a petition in support of an alien's application for immigration benefits, and the alien must submit a form to seek a change in his or her immigration status. These forms are signed under the penalty of perjury, and anyone who assisted in the application must also sign the application under penalty of perjury.

After filing the necessary paperwork, the spouse and alien beneficiary are scheduled for an interview with USCIS personnel for the purpose of determining eligibility for adjustment of

immigration status. A purpose of the interview is to determine that the parties were free to marry, that the marriage was entered into in good faith, and that it was bona fide (i.e., not entered into for the purpose of obtaining immigration benefits in the United States).

2. *Hopper's Conduct*

Hopper and others conspired to enrich themselves by operating a marriage-fraud scheme in which they facilitated the creation of sham marriages in order to illegally obtain admission and immigration status for aliens in the United States. It was part of the conspiracy that Hopper and others recruited United States citizens to enter into fake marriages with aliens for the primary purpose of circumventing immigration laws of the United States, and to make false representations to USCIS. It was further a part of the conspiracy that U.S. citizens were induced to enter into sham marriages with the promise of payment.

From at least December 2020 through March 2022, Hopper recruited Maryland-based U.S. citizens to enter into sham marriages with aliens. Hopper promised U.S. citizens payment in return for entering into sham marriages and petitioning for immigration benefits on behalf of alien spouses. For example, in December 2020, Hopper recruited a U.S. citizen-spouse residing in Maryland, A.G., to enter into a sham marriage with an alien, K.G., with the promise of payment. After A.G. and K.G. wed, Hopper obtained copies of A.G.'s birth certificate and social security card for use in preparing a false application for immigration benefits. A.G. subsequently filed a Form I-130 on behalf of K.G. K.G. paid thousands of dollars to Hopper's co-conspirators to facilitate the marriage and prepare a false application for immigration benefits.

The conspiracy spanned multiple states. For example, in April 2021, Hopper recruited a U.S. citizen-spouse residing in Maryland, M.B., to enter into a sham marriage with an alien, D.I. To facilitate the sham marriage, Hopper arranged for M.B. to travel from Maryland to Connecticut,

where the marriage ceremony occurred. Likewise, in March 2022, Hopper recruited a third U.S. citizen-spouse residing in Maryland, R.A., with the promise of payments in exchange for entering into a sham marriage with an alien, O.B. To facilitate the sham marriage, Hopper made arrangements for R.A. to travel to Connecticut, where the marriage ceremony occurred.

As a result of Hopper's efforts, at least six U.S. citizen spouses entered into sham marriages and made immigration filings with USCIS. The primary purpose of the marriages was to circumvent U.S. immigration laws.

## II.    GUIDELINE CALCULATIONS

### A.  Statutory Maximum Sentence

Pursuant to 18 U.S.C. § 371, Conspiracy to Commit Visa Fraud and Marriage Fraud carries a statutory maximum sentence of five years' imprisonment, three years of supervised release, and a maximum fine of the greater of $250,000 or twice the pecuniary gain or loss, pursuant to 18 U.S.C. § 3571(d), and a special assessment of $100.

### B. Sentencing Guidelines Calculation

The base offense level is 11. *See* U.S.S.G. §2L2.1(a). The parties agree that a 3-level increase applies pursuant to §2L2.1(b)(2)(A) because the offense involved more than 6 and fewer than 25 documents or passports (subtotal: 14). The government does not oppose a 2-level reduction in Hopper's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon her prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct (subtotal: 12). The government also agreed not to oppose a 2-level reduction pursuant to U.S.S.G. § 4C1.1 (Adjustment for Certain Zero-Point Offenders) if the Office of United States Probation determined that the defendant is eligible for such a reduction, and Probation concluded Hopper was so eligible (subtotal: 10).

The government disagrees with the PSR in one respect. Probation concluded that an additional 1-point reduction was warranted under §3E1.1(b), because Hopper timely accepted a plea offer. However, that provision applies only where the offense level, prior to operation of the subsection, is "level 16 or greater." Because Hopper's offense level is less than 16, § 3E1.1(b) does not apply. Accordingly, the final adjusted offense level is 10.

Hopper's criminal history category is I. This results in an advisory U.S. Sentencing Guidelines range of 6-12 months.

### III.   18 U.S.C. § 3553(a) FACTORS DEMONSTRATE THAT THE DEFENDANT SHOULD BE SENTENCED TO NINE MONTHS' IMPRISONMENT

Pursuant to 18 U.S.C. § 3553(a), the Court must consider several factors in fashioning a sentence that is sufficient but not greater than necessary to comply with the aims of sentencing. In contemplation of those factors, the government recommends a sentence of nine months, to be followed by three years of supervised release.

#### A.   The Nature and Circumstances of the Offense and the Defendant's History and Characteristics Warrant the Requested Sentence

Hopper participated in a calculated scheme to defraud the United States immigration system over an extended period. Her involvement in the scheme was not limited to a single act of an isolated lapse in judgment. To the contrary, as agreed in the Stipulation of Facts, Hopper was an active participant in a marriage fraud scheme spanning multiple states, from at least December 2020 through March 2022.

The scope of the conspiracy reveals sophisticated planning and execution. Over the course of approximately fifteen months, Hopper recruited at least six U.S. citizens to enter into fraudulent marriages with aliens for the express purpose of circumventing immigration laws. Her role was central and active. She identified vulnerable U.S. citizen participants, promised them payment in exchange for their cooperation, arranged logistics including interstate travel for marriage

5

ceremonies, and facilitated the preparation of fraudulent immigration applications by obtaining necessary documentation, such as birth certificates and social security cards.

To be sure, Hopper has no prior criminal history. The Sentencing Guidelines already account for the fact that this is her first offense, however. Hopper is subject to a lesser range of imprisonment on account of her Criminal History Category and receives the benefit of a zero-point offender reduction. The lack of a criminal history, while noteworthy, does not diminish the seriousness of the instant offense or the need for a meaningful sentence.

    **C.**     **A Sentence of Nine Months Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Just Punishment, and Promotes the Goals of Deterrence**

While immigration fraud does not involve the most egregious conduct, it is nonetheless a serious offense. The false filings that Hopper facilitated wasted significant government resources by diverting time and attention away from meritorious applicants toward fraudulent petitions. That diversion of resources forces legitimate petitioners to suffer lengthy delays in which their immigration status is in legal limbo. Additionally, Hopper's conduct targeted and exploited financially vulnerable U.S. citizens, who were promised easy money. So too were the alien beneficiaries exploited. While alien petitioners may have sought out these immigration services voluntarily, they paid thousands of dollars for nothing; to the extent any of the aliens obtained benefits, those benefits were procured through fraud and are revocable. In short, Hopper's actions, and those of her co-conspirators, are not victimless.

Additionally, conduct like Hopper's, multiplied across numerous schemes nationwide, diminishes respect for the rule of law. When fraud becomes commonplace, it sends a message that immigration laws are optional, that the system can be gamed, and that the rules are for suckers. The Court's sentence must send a message, to Hopper and the public, that those who seek to

defraud the government will be held to account. A nine-month term of imprisonment, to be followed by a three-year term of supervised release, makes that message clear.

## CONCLUSION

For all of these reasons, the government respectfully asks this Court to sentence the defendant to nine months' imprisonment, followed by three years supervised release with all recommended conditions sought by U.S. Probation.

                                         Respectfully submitted,

                                         Kelly O. Hayes
                                         United States Attorney

By:          /s/
                    Spencer L. Todd
                    Assistant United States Attorney